*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

KOSTA LAKOVIC,

Defendant-Appellant.

UNPUBLISHED
July 28, 2026
2:38 PM

No. 373750
Allegan Circuit Court
LC No. 2022-025563-FH

Before: MALDONADO, P.J., and RIORDAN and YOUNG, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(b) (sexual contact with a household member between the ages of 13 and 16). On appeal, defendant argues that his due-process right to a fair trial was violated by the admission of other-acts evidence and testimony about grooming. Further, defendant argues that his conviction for CSC-II was supported by insufficient evidence because insufficient evidence was offered to show that he touched KC for a sexual purpose. We affirm.

## I. BACKGROUND

Defendant's conviction stems from an incident that occurred in August 2022. At that time defendant was dating and living with Shannon Pitcock and her three daughters: SP, TP, and KP. The victim, KC, was also living with Pitcock. On August 18, 2022, KC, who was 15 years old, went upstairs to take a nap. Shortly thereafter, defendant came upstairs and into the bedroom where KC was napping. Defendant placed his hand on her waist, slid his hand under the blanket, and touched KC's upper thigh and between her legs in a "squeezing" and "groping" manner. KC was wearing a tank top and shorts, so defendant was touching her skin. KC told TP about the incident, and the police were notified. When defendant was interviewed by the police, he admitted to touching KC and that KC had grabbed his wrist and asked him to stop. However, defendant denied "groping" KC. The Allegan County Prosecuting Attorney's Office charged defendant with one count of CSC-II.

-1-

Before trial, the prosecution provided defendant with a notice of intent to offer other-acts evidence under MCL 768.27a(1).[1] The notice indicated that the prosecution sought to admit information in a police report that accused defendant of committing other inappropriate acts against Shannon's three daughters, including: (1) evidence of grooming, accosting, and inappropriate touching; (2) evidence that defendant grabbed TP's breast during a game and made sexual comments; (3) evidence that defendant made SP play games with "sexual overtones" and made sexual comments; and (4) evidence that defendant made sexual comments to Pitcock's 9-year-old daughter, KP. Defendant objected, arguing that there were no allegations of defendant grooming or accosting in the police reports, so such allegations were inadmissible unless the prosecution provided a bill of particulars regarding the allegations. Similarly, defendant objected to the admissibility of testimony accusing defendant of making sexual comments unless such comments were actually described. Defendant also argued that evidence of defendant touching TP's breast during a game was inadmissible because such conduct was not a listed offense against a minor.

The trial court determined that it would allow the prosecution to present the other-acts evidence; however, it required the prosecution to articulate the "sexual comments" more specifically in a supplemental report of some kind, and articulate "any accosting and grooming behavior" in a "better way" at trial.

At trial, KC testified about the incident discussed earlier. TP, who was then 17 years old, also testified about the uncomfortable interactions she had with defendant. On one occasion, defendant told TP: "Be careful. You might get frosting on your boob," as she carried a cake. On another occasion, defendant tagged TP on her chest while playing a game of Marco Polo in a pool. SP, who was then 16 years old, testified that on one occasion defendant grabbed her waist to move her out of the way. She also testified defendant told her that she reminded him of the song, "Crazy Girl" or "Crazy B word," which SP listened to and testified that it contained sexually explicit content about a girl having sex. Both TP and SP also testified about an instance when defendant made up an inappropriate game, requiring them to draw a picture of a penis. The trial court also heard testimony from the detective that interviewed defendant. The detective was asked to define grooming. Defendant objected, but the objection was overruled and the detective defined grooming as "when somebody's building the relationship, building trust, building communication with a younger adult, a child, in [an] attempt to exploit them, to manipulate them, and to abuse them." On cross-examination, the detective testified that the word "grooming" did not appear in his police report.

The trial court provided the jury with the following instruction concerning the admission of other-acts evidence:

> You have heard evidence that was introduced to show that the defendant has engaged in improper sexual conduct for which the defendant is not on trial. If you believe this evidence, you must be very careful to consider it for only one

---

[1] Defendant first proceeded to trial in March 2024. However, this trial ended in a hung jury. This appeal concerns defendant's second jury trial for the charged offense. The prosecution filed the notice of intent to offer other-acts evidence before the first trial.

limited purpose. That is to help judge the believability of the testimony of [KC] regarding the acts for which the defendant is now on trial. You must not consider this evidence for any other purpose.

For example, you must not decide that it shows the defendant is a bad person or that the defendant is likely to commit crimes. You must not convict the defendant here because you think he's guilty of other bad conduct.

Defendant was found guilty of CSC-II. This appeal follows.

## II. ANALYSIS

## A. OTHER-ACTS EVIDENCE

On appeal, defendant argues that he was denied a fair trial because the other-acts evidence was inadmissible under MCL 768.27a and was unfairly prejudicial. We conclude that the other-acts testimony was admissible.

We review this preserved evidentiary error for an abuse of discretion. *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019); see also MRE 103(a)(1). "A trial court necessarily abuses its discretion when it admits evidence that is inadmissible as a matter of law." *People v Denson*, 500 Mich 385, 396; 902 NW2d 306 (2017). "The questions of law involved in the admission of evidence" and constitutional issues are "reviewed de novo." *People v Pinkney*, 316 Mich App 450, 474; 891 NW2d 891 (2016). "A decision on a close evidentiary question ordinarily cannot be an abuse of discretion." *Thorpe*, 504 Mich at 252. "The United States Constitution and the Michigan Constitution each guarantee that a criminal defendant receives due process of law." *People v Horton*, 341 Mich App 397, 401; 989 NW2d 885 (2022). "Implicit in this guarantee is that each criminal defendant enjoys the right to a fair trial . . . ." *Id*. Admitting certain evidence against a criminal defendant may violate due process when that evidence "is so extremely unfair that its admission violates fundamental conceptions of justice." *Dowling v United States*, 493 US 342, 352; 110 S Ct 668; 107 L Ed 2d 708 (1990) (quotation marks and citation omitted).

Generally, "evidence of other crimes, wrongs, or acts of an individual is inadmissible to prove a propensity to commit such acts." *People v Crawford*, 458 Mich 376, 383; 582 NW2d 785 (1998), citing MRE 404(b). As our Supreme Court explained in *People v Watkins*, 491 Mich 450, 470; 818 NW2d 296 (2012), other-acts evidence is not precluded because a defendant's criminal history and propensity for committing a particular crime is irrelevant. Rather, "it is because of the human instinct to focus exclusively on the relevance of such evidence that the judiciary has traditionally limited its presentation to juries." *Id*., quoting *People v Pattison*, 276 Mich App 613, 620; 741 NW2d 558 (2007).

However, MCL 768.27a allows the prosecution to offer such evidence against a defendant charged with listed offenses against a minor, as defined in Section 2 of the sex offenders registration act, MCL 28.722. MCL 768.27a(1) provides, in relevant part, as follows:

> [I]n a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense

against a minor is admissible and may be considered for its bearing on any matter to which it is relevant.

Notably, MCL 768.27a allows the prosecution to introduce evidence of defendant's other sexual offenses against minors, even if those offenses did not result in charges or a conviction. See *People v Petri*, 279 Mich App 407, 411; 760 NW2d 882 (2008); *Pattison*, 276 Mich App at 618-619. Further, as the statute allows other-acts evidence to "be considered for its bearing on any matter to which it is relevant," it may be used to establish a defendant's propensity to commit the charged offense. In this way, MCL 768.27a permits the admission of evidence for propensity purposes that MRE 404(b) precludes, establishing an exception for cases involving sexual misconduct against a minor. *Watkins*, 491 Mich at 470-471.

In the present case, it is undisputed that the charged offense—CSC-II—is a listed offense under Section 2 of the sex offenders registration act, satisfying the first requirement of MCL 768.27a. Defendant also does not argue that the prosecution's notice of intent to introduce other-acts evidence under MCL 768.27a was improper. Rather, defendant contends that the testimony that he engaged in other acts was improperly admitted at trial because it did not involve defendant "committ[ing] another listed offense against a minor." MCL 768.27a(1).

### 1. TOUCHING OF TP

With regard to the testimony about defendant touching TP's breast during a game, we conclude that this evidence was properly admitted under MCL 768.27a.

This testimony satisfies the elements of fourth-degree criminal sexual conduct (CSC-IV), MCL 750.520e(1)(a), a listed offense for purposes of MCL 768.27a when committed against a minor. See *People v Beck*, 510 Mich 1, 19; 987 NW2d 1 (2022). "A person is guilty of [CSC-IV] if the person engages in sexual contact with another person and if any of the following circumstances exist: (a) That other person is at least 13 years of age but less than 16 years of age, and the actor is 5 or more years older than that other person." MCL 750.520e(1)(a). Sexual contact is defined, in relevant part, as follows:

> [T]he intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, done for a sexual purpose, or in a sexual manner for:
>
> (*i*) Revenge.
>
> (*ii*) To inflict humiliation.
>
> (*iii*) Out of anger. [MCL 750.520a(q).]

Further, intimate parts is defined to include "the primary genital area, groin, inner thigh, buttock, or breast of a human being." MCL 750.520a(f).

The testimony demonstrated that defendant engaged in sexual contact with TP by intentionally touching her breast, an intimate body part, during a game. TP was between 13 and 16 years old when this conduct occurred in 2021, and defendant, who was born in 1974, was decades older than her. A reasonable jury also could have concluded that defendant touched TP for a sexual purpose. TP testified that defendant's contact with her breast made her feel uncomfortable. Although TP acknowledged that the purpose of the game was to tag an opposing player and that defendant may have touched her unintentionally, it was inappropriate and extraordinary for an adult man to touch the breasts of a 13 to 16 year old girl, even in the context of a game. Notably, the trial court determined that this other-acts evidence qualified as a listed offense regardless of the fact that it occurred during a game. A "trial court's decision on a close call cannot be an abuse of discretion." *Horton*, 341 Mich App at 410. Accordingly, the testimony established that defendant engaged in a listed offense against a minor and was properly admitted under MCL 768.27a.[2]

Defendant also argues that this testimony should have been excluded under MRE 403 as unfairly prejudicial. Under MRE 403, a court may exclude relevant evidence when "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Although "evidence admissible under MCL 768.27a remains subject to MRE 403, . . . courts must weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect." *Watkins*, 491 Mich at 496. Therefore, this evidence was highly probative of defendant's propensity to inappropriately touch young girls in his household. Further this probative value was not substantially outweighed because defendant's cross-examination of TP's testimony and the trial court's limiting instruction both sufficiently minimized any prejudicial effect. See *People v Mullins*, 322 Mich App 151, 173; 911 NW2d 201 (2017); see also *Weeks v Angelone*, 528 US 225, 234; 120 S Ct 727; 145 L Ed 2d 727 (2000). Therefore, this testimony was properly admitted as evidence of defendant engaging in a listed offense against a minor under MCL 768.27a.

## 2. THE REMAINING OTHER ACTS

Unlike the evidence involving inappropriate touching of TP, the rest of the other-acts evidence presented by the prosecution was not admissible under MCL 768.27a because defendant's actions and comments did not qualify as listed offenses.[3] This evidence includes: (1) TP's testimony that defendant made the following remark to her as she carried a cake: "Be careful. You might get frosting on your boob"; (2) testimony alleging that defendant asked TP and SP to

---

[2] Even if the trial court erred by admitting this evidence, it would nevertheless be admissible under MRE 404(b) for the same reasons discussed later.

[3] These listed offenses include, in general terms: all CSC offenses, MCL 750.520b through MCL 750.520g; first and second-degree child abuse, MCL 750.136b(2) to (3); exploitation and solicitation, MCL 750.145c, MCL 750.145a, MCL 750.145d; and kidnapping and human trafficking, MCL 750.349, MCL 750.135, MCL 750.462a through 750.462h. See MCL 768.27a (cross-referencing, MCL 28.722). Defendant's inappropriate actions and comments do not satisfy the elements for any of these listed offenses.

draw a penis; (3) defendant telling SP that she reminded him of a song that includes sexually explicit content; and (4) defendant touching SP's waist.

However, even though this evidence was not properly admitted under MCL 768.27a, it was admissible under MRE 404(b). See *People v Smith*, 282 Mich App 191, 205-206; 772 NW2d 428 (2009). As this Court has explained:

> Where listed offenses are at issue, the analysis begins and ends with MCL 768.27a. If listed offenses are not at issue, even where an uncharged offense may genuinely constitute an offense committed against a minor that was sexual in nature, MCL 768.27a is not implicated, but this is not to say that evidence of the offense is inadmissible. We do not construe MCL 768.27a as suggesting that evidence of an uncharged sexual offense committed against a minor is inadmissible if the offense does not constitute a listed offense. Rather, the analysis simply turns to MRE 404(b) to decipher admissibility. Only where the evidence does not fall under the umbrella of MCL 768.27a, nor is otherwise admissible under MRE 404(b), should the court exclude the evidence. [*Id*.]

Accordingly, we must analyze whether this other-acts evidence was admissible under MRE 404(b).

Before evidence of other crimes, acts, or wrongs may be admitted under MRE 404(b), the evidence must pass a four-part test as established by our Supreme Court in *People v VanderVliet*, 444 Mich 52, 55; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994). See *People v Sabin (After Remand)*, 463 Mich 43, 55-56; 614 NW2d 888 (2000). To be admissible, (1) the evidence must be "offered for a proper purpose under MRE 404(b)"; (2) the evidence must be relevant; (3) the evidence's probative value cannot be substantially outweighed by the danger of unfair prejudice; and (4) "the trial court may, upon request, provide a limiting instruction to the jury." *VanderVliet*, 444 Mich at 55.

First, the prosecutor must have articulated "a proper noncharacter purpose for admission" of the other-acts evidence. *Crawford*, 458 Mich at 385. Other-acts evidence may be admissible for purposes other than propensity, "such as proving motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, absence of mistake, or lack of accident." MRE 404(b)(2). Evidence of a noncharacter purpose is admissible even if it also reflects on defendant's character. *People v Mardlin*, 487 Mich 609, 615; 790 NW2d 607 (2010).

In the present case, the earlier described other-acts evidence was admissible to prove motive, intent, scheme, plan, or system. Specifically, the other-acts evidence suggested that defendant had intentionally touched KC in a sexual way, and why he may have touched KC, i.e., for a sexual purpose. In addition, the trial court could have admitted the evidence to show scheme, plan, or system because it demonstrated defendant's pattern of engaging inappropriately with the young girls in his household. See *People v Dobek*, 274 Mich App 58, 90-91; 732 NW2d 546 (2007). Specifically, this evidence of pattern would have provided the jury with the full context of defendant's interactions with the young girls in his household. See *Smith*, 282 Mich App 191, 205. Accordingly, the first part of the *VanderVliet* test is satisfied.

Second, the prosecutor must have demonstrated the relevance of the other acts. *VanderVliet*, 444 Mich at 55. [L]ogical relevance," i.e., the second part of the VanderVliet test is "the 'touchstone' of the admissibility of other-acts evidence." *Denson*, 500 Mich at 401. "Other-acts evidence is logically relevant if two components are present: materiality and probative value." *Id*. Materiality requires that the "evidence be related to any fact that is of consequence to the action." *Id*. (quotation marks and citation omitted). A fact is "of consequence to the action" if it is "directed at an element of the crime or an applicable defense" or if it "is 'in issue' in the sense that it is within the range of litigated matters in controversy." *Sabin*, 463 Mich at 57 (quotation marks and citations omitted). "[A]ll elements of a criminal offense are 'in issue' when a defendant enters a plea of not guilty." *People v Mills*, 450 Mich 61, 69; 537 NW2d 909 (1995), mod on other grounds 450 Mich 1212 (1995).

In the present case, defendant denied that he touched KC for a sexual purpose. The testimony regarding defendant's sexual comments to other young girls of the household, the testimony regarding defendant having the young girls draw a penis, and the testimony of defendant touching the waist of one of the girls all supported the inference that defendant's interaction with KC was for a sexual purpose because he had engaged in behavior that could reasonably be interpreted as inappropriate and sexual with other young female members in his household—the same household as KC. Further, inappropriate touching for a sexual purpose is a required element of the charged offense. Therefore, the other-acts evidence was related to a fact of consequence.

The other-acts evidence must also have probative value. "Evidence is probative if it tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Denson*, 500 Mich at 401-402 (quotation marks and citations omitted). "In the context of prior acts evidence, however, MRE 404(b) stands as a sentinel at the gate: the proffered evidence truly must be probative of something other than the defendant's propensity to commit the crime." *Id*. at 402 (quotation marks and citation omitted). At the time of trial, MRE 401 stated that " 'relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." For the same reasons just discussed, the other-acts evidence made it more probable that defendant touched KC for a sexual purpose.

The challenged evidence was also probative because it demonstrated defendant's scheme, plan, or system. Notably, it revealed a pattern of defendant engaging inappropriately with the young girls that were within his household. See *Dobek*, 274 Mich App at 90-91. "[W]hether the other-acts evidence forms a pattern is relevant to determining its probativeness." *People v Beck*, 510 Mich 1, 24 n 14; 987 NW2d 1 (2022). Defendant's acts ranged from touching that made the young girls uncomfortable to inappropriate sexual comments, and then ultimately escalating to the inappropriate sexual contact that was the basis of defendant's conviction. Further, as discussed later, the other acts and charged offense were sufficiently similar to support the inference that defendant employed a common plan, scheme, or system because defendant acted inappropriately on several occasions with the young girls in his household. See *Dobek*, 274 Mich App at 84, 90-91.

In addition, as indicated by the trial court, this other-acts evidence also lends credibility to KC's testimony. The testimony regarding defendant's other inappropriate behaviors with the young girls in his household make it less likely that KC fabricated her testimony regarding the sexual nature of defendant's touching. Defense counsel also attacked KC's credibility in his closing argument; therefore, the other-acts evidence was useful to rebut defense's claim that KC's testimony was inconsistent. Accordingly, the other-acts evidence was probative of the issues of intent, scheme, plan, and system, as well as on credibility and presenting the full picture to the jury. See *id*. at 91. Therefore, the second part of the *VanderVliet* test is satisfied.

Third, the probative value of the other-acts evidence must not be "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403. "Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *Mardlin*, 487 Mich at 627 (quotation marks and citation omitted). Our Supreme Court has provided a list of considerations for courts to assess when determining whether other-acts evidence should be excluded:

> (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*Watkins*, 491 Mich at 487-488.]

In the present case, defendant only contests the similarity of the other acts to the charged offense and the need for evidence beyond KC's testimony. We conclude that these factors weighed in favor of admitting the other-acts evidence at trial.

Although none of the other acts were exactly like the charged offense, they all involved defendant engaging inappropriately with young girls in his home by making sexual comments, playing games with sexual undertones, or touching the girls in a way that made them uncomfortable. Considering the similarities between the victims and the fact that both the other acts and charged offense all demonstrated defendant had a tendency to act inappropriately or in a sexual manner, this factor weighs in favor of admission. Notably, as discussed, the other-acts evidence did form a pattern which further adds to its probative value. See *Beck*, 510 Mich at 24 n 14.

In addition, the only evidence of the charged offense was KC's testimony. As discussed earlier, defendant attacked KC's credibility. Therefore, the testimony of the other acts was necessary to lend credibility to KC's testimony and provide additional context regarding defendant's interactions with the young girls in his household. Accordingly, this factor also weighs in favor of admission.

However, the factors are "a tool to facilitate, not a standard to supplant a trial court's MRE 403 analysis." *People v Berklund*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367568); slip op at 10 (quotation marks and citation omitted). Therefore, to assess the

probative value against the prejudicial effect, several other factors must be balanced. *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008). These factors include:

> the time required to present the evidence and the possibility of delay, whether the evidence is needlessly cumulative, how directly the evidence tends to prove the fact for which it is offered, how essential the fact sought to be proved is to the case, the potential for confusing or misleading the jury, and whether the fact can be proved in another manner without as many harmful collateral effects. [*Id*.]

In the present case, the other-acts testimony was brief, and defendant does not assert that it took an undue amount of time or delayed the proceedings. It was also not cumulative to other evidence. Moreover, there was minimal potential for confusing the jury because the other acts did not involve the victim of the charged offense. The evidence was also presented in a way that minimized harmful collateral effects because it was brief, and the prosecution did not unduly emphasize the other acts. Moreover, the testimonies about defendant's sexual comments, inappropriate games, and uncomfortable touching were no more inflammatory than what was already testified about by KC—that defendant squeezed and groped her upper thigh and between her legs while she was in bed napping.

Therefore, we conclude that, although this other-acts evidence was not admissible under MCL 768.27a, it was admissible under MRE 404(b). However, because the trial court did not engage in an analysis under MRE 404(b), the trial court abused its discretion.

### 3. HARMLESS ERROR

Regardless, defendant is not entitled to relief because these errors did not affect the outcome of the trial.

Under harmless error review, a judgment or verdict should not be reversed unless "the error complained of has resulted in a miscarriage of justice." *Thorpe*, 504 Mich at 252, quoting MCL 769.26. A miscarriage of justice occurs when a defendant demonstrates that, without the evidentiary error, a different outcome to the trial was more probable than not. *Id*.; *People v Bass*, 317 Mich App 241, 255; 893 NW2d 140 (2016).

Although the evidence was improperly admitted under MCL 768.27a, it was still admissible under MRE 404(b); therefore, the trial court's error did not result in the introduction of inadmissible other-acts evidence. See *Smith*, 282 Mich App at 205-206 (considering the admissibility of other-acts evidence under 404(b) when not admissible under MCL 768.27a). Moreover, although the prosecution did not provide notice indicating that it was requesting admission of the other-acts evidence under 404(b), defendant had notice and the opportunity to object to the admission of the evidence before trial because of the prosecution's notice of intent to introduce the same evidence under MCL 768.27a. Accordingly, defendant did not suffer "unfair surprise" from the introduction of this testimony at trial. *People v Jackson*, 498 Mich 246, 261; 869 NW2d 253 (2015).

Additionally, the other evidence of defendant's guilt was enough to sustain a conviction. Specifically, KC testified that defendant entered the bedroom, placed his hand on her waist, reached under her blanket, and squeezed his fingers between her legs in a groping manner.

Defendant later admitted to going into the bedroom and touching KC when interviewed by law enforcement. Although defendant alleged that he merely attempted to wake KC up, this testimony was not persuasive enough for the jury to reach a different outcome at trial. In light of defendant's concessions and KC's testimony, the jury had sufficient evidence to render a guilty verdict, despite any evidentiary errors.

The trial court record also indicates that defendant confronted the witnesses about their other-acts testimony to further limit its prejudicial effect. On cross-examination, TP acknowledged that defendant touched her breast during a game that required intentional contact with other players. TP also indicated that defendant may not have touched her breast intentionally. This testimony provided the jury with the additional context behind the touching, which could have allowed the jury to find that defendant did not engage in sexual contact with TP. Defendant also elicited testimony showing that an adult was present when defendant asked the girls to draw a penis while playing a game, which could indicate that defendant did not nefariously make the request, given that another adult was present when the request was made. As noted by the trial court in its limiting instruction, the jury was free to determine whether it believed defendant had actually committed the other acts introduced by the prosecution.

The trial court's limiting instruction also specifically addressed how the other-acts evidence should be used. The trial court instructed the jury that the other-acts evidence should only be used to judge KC's credibility and not considered as evidence that the defendant was likely to commit crimes. "Jurors are presumed to follow the court's instructions, and instructions are presumed to cure most errors." *Mullins*, 322 Mich App at 151; see also *Weeks*, 528 US at 234. Thus, any potential for unfair prejudice arising from the admission of other-acts evidence, assuming there was any, was mitigated by the court's instruction. See *People v Roscoe*, 303 Mich App 633, 646; 846 NW2d 402 (2014).

Accordingly, the error of admitting this other-acts evidence under MCL 768.27a did not affect the outcome of the trial. See *Thorpe*, 504 Mich at 252. As a result, defendant is not entitled to reversal on this ground. See MCL 769.26.

## B. GROOMING TESTIMONY

Defendant also argues that he was denied a fair trial because testimony about grooming was improperly admitted despite the evidence being not relevant and unfairly prejudicial. Specifically, defendant challenges the detective's testimony defining grooming. Although we agree that this evidence was improperly admitted, we conclude that any error was harmless.

MRE 402 states the general rule that all relevant evidence is admissible unless excluded by another rule of evidence. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence in determining the action. MRE 401. As discussed earlier, a fact is "of consequence to the action" if it is "directed at an element of the crime or an applicable defense" or if it "is 'in issue' in the sense that it is within the range of litigated matters in controversy." *Sabin*, 463 Mich at 57 (quotation marks and citations omitted). Whether defendant engaged in grooming behaviors was not at issue because defendant was not on trial for grooming and the prosecution was not required to prove that defendant engaged in grooming behaviors. Instead, the "fact of consequence" was whether

defendant engaged in sexual contact with a victim between the ages of 13 and 16. See MCL 750.50c(1)(b). Accordingly, this testimony was not relevant.

Even if the evidence was marginally relevant, it was still not admissible under MRE 403 because it was unfairly prejudicial and likely confused the jury. "Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *Crawford*, 458 Mich at 398. In the present case, the evidence was unfairly prejudicial because it was not relevant and it carried the risk that the jury would convict defendant because he was a bad person who grooms young girls, rather than upon the evidence for the charged offense. Further, the grooming evidence also carried the risk of confusing the jury because, defendant was not on trial for grooming so it was possible that the jury would be confused about what offense defendant was on trial for.

Nonetheless, reversal is not warranted because, despite this error, defendant cannot show that the admission of this evidence "resulted in a miscarriage of justice." See *Thorpe*, 504 Mich at 252.

In the present case, grooming was only briefly referenced during the detective's testimony. In fact, the detective only discussed grooming when asked to define it. The detective's definition did not refer to defendant and the detective did not claim that defendant groomed KC or any other minor. Moreover, after the detective made this lone reference, the prosecution did not elicit any further testimony about grooming or accusing defendant of grooming. Instead, it was defendant who highlighted the inadmissible testimony. During cross-examination, defendant asked the detective how many times the word grooming appeared in the police report. In engaging in this line of questioning, defendant highlighted the inadmissible testimony and prejudiced his own trial. Defendant continued to prejudice his trial by discussing grooming during his closing argument.

Thus, defendant amplified the inadmissible evidence regarding grooming at trial, further prejudicing his own trial. See *People v Butsinas*, ___ Mich App ___, ____; ___ NW3d ___ (2025) (Docket No. 364778); slip op at 22 (stating that a defendant cannot assert a claim of error on appeal for testimony that he purposefully invited). Accordingly, reversal is also not warranted on this ground. See *id.*; *Thorpe*, 504 Mich at 252-253.

C. SUFFICIENCY OF EVIDENCE

Defendant argues that there was insufficient evidence for the jury to find beyond a reasonable doubt that he touched KC for a sexual purpose. We disagree.

"We review de novo a challenge to the sufficiency of the evidence." *People v Savage*, 327 Mich App 604, 613; 935 NW2d 69 (2019). "We review the evidence in the light most favorable to the prosecution and determine whether the jury could have found each element of the charged crime proved beyond a reasonable doubt." *Id*. "Circumstantial evidence and reasonable inferences arising therefrom may constitute proof of the elements of a crime." *Id*. (quotation marks, citation, and alteration omitted). "We are also required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *Id*. (quotation marks and citation omitted).

"In determining whether the prosecution has presented sufficient evidence to sustain a conviction," we must determine "whether there was sufficient evidence to justify a rational trier

of fact in finding guilt beyond a reasonable doubt." *People v Johnson*, 460 Mich 720, 722-723; 597 NW2d 73 (1999) (quotation marks and citation omitted). "The sufficient evidence requirement is a part of every criminal defendant's due[-]process rights." *Id*. at 723. This requirement attempts "to give concrete substance to those rights, by precluding irrational jury verdicts." *Id*. (quotation marks and citation omitted). In reaching a verdict, a jury may draw reasonable inferences from circumstantial evidence presented at trial to establish factual support for an element of a crime. *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992), amended on other grounds 441 Mich 1201 (1992). Additionally, to obtain a conviction "the prosecutor need not negate every reasonable theory consistent with innocence." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). Rather, "it need only convince the jury in the face of whatever contradictory evidence the defendant may provide." *Id*. at 400 (quotation marks and citation omitted).

Here, defendant was convicted of CSC-II under MCL 750.520c(1)(b), which requires proof (1) that defendant engaged in sexual contact with the victim, (2) that the victim was at least 13 years old but younger than 16 years old, and (3) that the victim and defendant are members of the same household. As discussed earlier, sexual contact is defined, in relevant part, as:

> [T]he intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, [or] done for a sexual purpose[.] [MCL 750.520a(q).]

Further, intimate parts is defined to include "the primary genital area, groin, inner thigh, buttock, or breast of a human being." MCL 750.520a(f).

"[W]hen determining whether touching could be reasonably construed as being for a sexual purpose, the conduct should be viewed objectively under a reasonable person standard." *People v DeLeon*, 317 Mich App 714, 719-720; 895 NW2d 577 (2016) (citation and quotation marks omitted). Further, "[b]ecause of the inherent difficulty of proving a defendant's state of mind, only minimal circumstantial evidence from which intent may be inferred need be presented." *People v Cameron*, 291 Mich App 599, 615; 806 NW2d 371 (2011).

We conclude that the jury was presented with sufficient evidence from which it could be inferred that defendant touched KC for a sexual purpose. KC testified that defendant touched her between her legs, i.e., her inner thigh, as she lay in bed. KC's inner thigh is an intimate body part. MCL 750.520a(f). Moreover, evidence indicates that defendant intentionally touched her inner thigh, as there was no indication the touching was accidental. To the contrary, KC alleged that defendant placed his hand underneath the blanket covering her and squeezed and groped her thigh for about three minutes. Defendant touching, squeezing, and moving his hands in a groping manner on the inner thigh of a 15-year-old girl who was lying in bed suggests that he did so for a sexual purpose, as there is not an otherwise socially reasonable or lawful explanation. See *DeLeon*, 317 Mich App at 719-720. If defendant had merely intended to wake KC up by touching her, as he alleged, he would not have needed to place his hand under the blanket or between her legs.

Additionally, KC's testimony alone is sufficient for a jury to conclude that defendant touched her inner thigh for a sexual purpose, because "[t]he testimony of a victim need not be corroborated in prosecutions [for CSC-II]." MCL 750.520h. Therefore, sufficient evidence supported defendant's conviction for CSC-II.

Affirmed.[4]

/s/ Allie Greenleaf Maldonado
/s/ Michael J. Riordan
/s/ Adrienne N. Young

---

[4] In light of our decision to affirm defendant's convictions, we need not address defendant's request to have this case remanded to a different judge, as this issue is moot, *People v Smith*, 502 Mich 624, 631; 918 NW2d 718 (2018).